EAG:DMP

**12 M 489**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

GLORIBEL LANFRANCO and
JEREMY CERDA,

        Defendants.

- - - - - - - - - - - - - - - - -X

C O M P L A I N T

(21 U.S.C. §§ 952(a)
and 960)

EASTERN DISTRICT OF NEW YORK, SS:

    EUGENE COZZA, being duly sworn, deposes and states that he is a Special Agent with United States Department of Homeland Security, Homeland Security Investigations ("HSI"), duly appointed according to law and acting as such.

    Upon information and belief, on or about May 20, 2012, within the Eastern District of New York and elsewhere, defendants GLORIBEL LANFRANCO and JEREMY CERDA did knowingly, intentionally and unlawfully import into the United States from a place outside thereof a substance containing cocaine, a Schedule II controlled substance.

    (Title 21, United States Code, Sections 952(a) and 960).

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. On May 20, 2012, the defendants GLORIBEL LANFRANCO and JEREMY CERDA arrived at John F. Kennedy International Airport ("JFK") in Queens, New York, aboard Jetblue Flight No. 838 from Santiago, Dominican Republic.

2. A Customs and Border Protection ("CBP") officer, accompanied by a canine unit, were conducting a customs enforcement examination of luggage being unloaded from Jetblue Flight No. 838. The canine unit alerted to the presence of narcotics in three bags: a black "Clipper Club" suitcase and two black "Transonite" suitcases. All three suitcases were sent into the baggage claim area.

3. Defendant GLORIBEL LANFRANCO claimed the black "Clipper Club" suitcase and one of the black "Transonite" suitcase. LANFRANCO was then selected for an enforcement examination. She stated that both bags were hers and that she packed them herself. Further inspection of both suitcases revealed that each suitcase contained a smaller suitcase inside it. Each of the four suitcases were found to have false sides. The false sides were probed to reveal a white powdery substance.

---

[1]   Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

2

The white powdery substance was field-tested and was positive for the presence of cocaine.

4. The approximate total gross weight of the cocaine found in the defendant GLORIBEL LANFRANCO's suitcase was 8,188.4 grams, consisting of approximately 2471.1 grams in the black "Clipper Club" suitcase, approximately 1913.1 grams in the smaller bag inside the black "Clipper Club" suitcase, approximately 2228.2 grams in the black "Transonite" suitcase, and approximately 1576 grams in the smaller bag inside the black "Transonite" suitcase.

5. Defendant JEREMY CERDA claimed the other black "Transonite" suitcase. CERDA was then selected for an enforcement examination. He stated that the bag was his and that he had packed it himself. Further inspection of the black "Transonite" suitcase revealed that it also contained a smaller suitcase inside it. Both the black "Transonite" suitcase and the smaller suitcase inside it were found to have false sides. During the examination, a white powder was seen leaking from one of the suitcases. The false sides were probed to reveal a white powdery substance. The white powdery substance was field-tested and was positive for the presence of cocaine.

6. The approximate total gross weight of the cocaine found in the defendant JEREMY CERDA's suitcase was 3,559.7 grams, consisting of approximately 2199.9 grams in the black

3

"Transonite" suitcase and approximately 1359.8 grams in the smaller bag inside the black "Transonite" suitcase.

7. After receiving and waiving her Miranda rights, the defendant GLORIBEL LANFRANCO stated that she had been recruited to travel to the Dominican Republic to bring drugs into the United States. She stated that she had been given cash to purchase round trip tickets for herself and for CERDA, which she purchased using her credit card. She admitted that she knew she was transporting illegal narcotics and that she was to be paid between $5,000 and $8,000 for bringing the drugs into the United States.

8. After receiving and waiving his Miranda rights, the defendant JEREMY CERDA similarly stated that he had been recruited to travel to the Dominican Republic to bring drugs into

4

the United States, knew he was transporting illegal drugs into the United States, and was to be paid $5,000 for doing so.

WHEREFORE, your deponent respectfully requests that the defendants GLORIBEL LANFRANCO and JEREMY CERDA be dealt with according to law.

```
_____
EUGENE COZZA
Special Agent
Homeland Security Investigations
```

Sworn to before me this
21st day of May, 2012

```
_____
HONORABLE JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK
```